MARY O'BRIEN, as Administratrix of the Estate of JOHN O'BRIEN, Deceased, Respondent, v. ERIE RAILROAD COMPANY, Appellant.

**Railroads — negligence — when engineer of railroad train has right to assume that persons on track will leave in time to escape injury.**

1. An engineer is not bound to stop his train the moment he sees some living object upon the track. He has the right, in broad daylight, when his train is perfectly visible and its approach must be heard and known, at least in the first instance, to assume that the object, whatever it is, will leave the track in time to escape injury. (*Chrystal* v. *Troy & Boston Railroad Company*, 105 N. Y. 164, 169, 170, followed.)

2. This rule applied where a foreman of repair workmen was run over by an express train, where the approaching train could be seen, according to the evidence on the part of plaintiff, for a distance of several hundred feet from the place where the accident occurred, and for a distance of 150 feet, as claimed by defendant, and, *held,* that the engineer had the right to assume that the foreman would leave the track in time to escape injury, and that a charge inconsistent with the rule in the *Chrystal* case was erroneous.

*O'Brien* v. *Erie R. R. Co.*, 148 App. Div. 931, reversed.

(Argued December 11, 1913; decided December 30, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 19, 1912, affirming by a divided court a judgment in favor of plaintiff entered upon a verdict. The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Bacon* for appellant. The failure to give signals at this point was not a breach of duty on the part of the engineer and did not constitute negligence on his part. (*Harty* v. *Central R. R. of N. J.*, 42 N. Y. 468; *Vandewater* v. *N. Y. & N. E. R. R. Co.*, 135 N. Y. 583; *Hintze* v. *N. Y. C. & H. R. R. R. Co.*, 140 App.

Div. 852; *Connell* v. *N. Y. C. & H. R. R. R. Co.*, 144 App. Div. 664; *Davis* v. *N. Y., N. H. & H. R. R. Co.*, 159 Mass. 532.)

*Thomas J. O'Neill* and *L. F. Fish* for respondent. It was the duty of the engineer to keep a constant lookout in front of his engine and to give signals to workmen on the track. (*Roll* v. *R. R. Co.*, 15 Hun, 496; 80 N. Y. 647; *Cumberland* v. *R. R. Co.*, 176 U. S. 236; *Louisville R. Co.* v. *Popp*, 96 Ky. 99; *Batteskill* v. *Humphrey*, 64 Mich. 519.) There was no error in the original charge; and the modifications made it free from the most technical complaint. (*Post* v. *R. R. Co.*, 195 N. Y. 62.)

HOGAN, J.   This action was brought under the statute and under section 42a of the Railroad Law, known as the Barnes Act, to recover damages for the death of John O'Brien, and has been twice tried.   Upon the first trial a nonsuit was granted, and the judgment entered thereon was upon appeal reversed and a new trial granted.   Upon this trial plaintiff recovered a verdict, which was affirmed by a divided court, and defendant now appeals to this court.

Plaintiff's intestate was an employee of the defendant in the capacity of foreman over a body of men, including one Vitalli, who were engaged in the work of repairing the tracks and roadbed of the defendant company near a station known as Turners, situate between Paterson, N. J., and Port Jervis, N. Y.

About ten o'clock in the morning of June 27, 1908, an express train bound west on track number one, which was not due to stop at Turners Station, approached the spot where the accident occurred at a speed of fifty miles an hour. East of Turners Station there is a curve in the tracks.   A locomotive traveling westerly around the curve in question would be visible from where the accident occurred for several hundred feet.   The evidence of

7

Vitalli discloses that at the point where he was at work a train coming from the east could be seen for a distance of about twenty-five rails, each about thirty feet in length. Vitalli was at work on track number one, his back towards the east, the direction from which the train was approaching. While thus employed, he heard plaintiff's intestate call, "Look out, look out," several times, but did not think O'Brien, the foreman, was calling to him. Thereupon the intestate came near to him and exclaimed, "What are you going to do, going to be killed or do you want to die?" and pushed him, Vitalli, off of track number one and on to track number two, the east-bound track. As intestate was stepping off of track number one he was struck by the locomotive, and as a result thereof was killed.

It was asserted by the plaintiff that defendant was chargeable with negligence by reason of a failure of the engineer to give warning by the usual signals of the whistle and bell; that he failed to maintain an outlook or reduce the speed of the train while rounding the curve, and in failing to see Vitalli on the track.

On behalf of the defendant it was claimed that the whistle was sounded at the whistling post east of the curve; that the automatic bell upon the locomotive was ringing, and continued to ring down to a point west of the place where the accident occurred, and that the vision of the engineer was limited in rounding the curve to a distance of about one hundred fifty feet.

The questions of negligence and contributory negligence were submitted to the jury.

The trial justice charged the jury "that it was the duty of the engineer in the exercise of due care to maintain a cautious and earnest outlook upon the track ahead, and if the track ahead was such a place as a curve where his vision was limited much beyond the ordinary vision on the straightaway track ahead, it was especially his duty to be on the alert and to have his locomotive under

such control that in case he did find by such vigilant out-look some obstacle in the way, he could, as far as reason-ably possible, check the speed of his locomotive and avert or help to avert an impending collision.    And his duty in that connection involved also the duty, under such cir-cumstances, passing around a curve, where his engine could not come in sight of the section gang working on the track ahead, until a comparatively near distance, to give a reasonable warning of his approach, and if neces-sity required to slow down his engine so as to prevent a collision."

Counsel for defendant took exception to that portion of the charge " that instructed the jury as the place was on a curve that it was the especial duty of the engineer at that time to have a vigilant outlook."

Counsel for the plaintiff stated: " I thought your honor said, or will say, that the jury could find that the curve added to it instead of making it an instruction of law, therefore the jury is the judge of the standard of care.

" The Court: I will modify the charge accordingly, that the jury are at liberty to find it, but not compelled to find it."

An exception was taken by the defendant.

At the request of counsel for the defendant, the justice instructed the jury that the duty of the engineer to make observations was fulfilled when he looked and made such observations as the character of the cab and the location where he was permitted.

Counsel for defendant excepted to so much of the charge to the jury as stated "that it was the duty of the engineer to give reasonable warning of approach upon the curve and if he had reason to expect men upon the curve to have his engine under control and slow down if necessary." The court, by consent of counsel for plain-tiff, modified the charge by stating "that the jury under the undisputed circumstances in this case with reference to the speed of the train are at liberty to find that the

duty of ordinary care required that, but not compelled to find it," to which modification defendant took an exception.

Counsel for defendant took further exception to so much of the charge " that instructed the jury that it was the duty of the engineer to keep a continuous and earnest lookout ahead." The trial justice thereupon stated, at the suggestion of the plaintiff's counsel: "I modify that by saying that the jury may find that this duty of ordinary care required that, but not that they are compelled to so find." An exception was taken by counsel for defendant to the modification as well as to the original charge.

We think the instruction to the jury was error. In *Chrystal* v. *Troy & Boston Railroad Company* (105 N. Y. 164, 169, 170), an action brought to recover for the death of an infant who had strayed upon the railroad track, Judge EARL wrote:

"This is the first case that has come before this court, and, so far as we know, before any court in this state, wherein must be defined the responsibilities of a steam railroad company, not otherwise in fault, to one lawfully upon its track, for not seeing him and stopping its train in time to avoid injuring him.    *    *    *

"An engineer is not bound to stop his train the moment he sees some living object upon the track. He has the right, in broad daylight, when his train is perfectly visible and its approach must be heard and known, at least in the first instance, to assume that the object, whatever it is, will leave the track in time to escape injury.    *    *    * Reasonable care in the management of trains which must make their time between stations, and have the right of way, does not require more."

The case referred to was again in this court. (124 N. Y. 519, 522; 141 N. Y. 572.) The instructions of the trial justice to the jury in this case were in conflict with that decision. Assuming that the engineer in charge of the train saw Vitalli on the track, he would have the right

to assume that Vitalli would leave the track in time to escape injury. The engineer was bound to exercise only reasonable care in the management of the train. As it was not due to stop at Turners Station negligence cannot be attributed to the act of the defendant in running through a country district at the rate of speed stated, nor to a failure on the part of the engineer to have his train under control in approaching the curve in expectation of finding a person upon the track west of the curve. Such a rule would materially interfere with the running of trains and impose upon defendant a rule of conduct heretofore disapproved by this court.

For the reasons assigned the judgment must be reversed and a new trial ordered, costs to abide the event.

CULLEN, Ch. J., WERNER, HISCOCK, CHASE, COLLIN and CUDDEBACK, JJ., concur.

Judgment reversed, etc.