GAROFANO CONSTRUCTION CO., INC., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31943.)

Third Department, March 21, 1956.

*Frank H. Connelly* and *John B. Gilleran* for appellant.

*Jacob K. Javits, Attorney-General (John R. Davison* and *James O. Moore, Jr.,* of counsel), for respondent.

*Per Curiam.* The claimant had entered into a contract with the State for the construction of a bridge to carry a local highway over the Taconic State Parkway. The contract called for the continuance of two lanes of uninterrupted vehicle traffic in each direction on the parkway while the work was in progress. It was originally contemplated that the temporary falsework to be used during the construction period would be supported by steel beams forming a single steel span, so that there would be

no obstruction of the parkway traffic. However, because of the shortage of steel during the Korean War, steel beams were not obtainable. The claimant and the State thereupon agreed that a double span of wooden timbers would be used, with a center pier in the middle of the parkway. Under the principal contract, the responsibility for the maintenance and protection of traffic rested upon the claimant. It was required to erect specified warning signs and lights and barricades and to provide watchmen and flagmen when necessary. The sum of $2,500 had been included in the claimant's bid for this item. In view of the changed plans for the falsework, the claimant requested the State to divert traffic from the highway but the State refused to do this. Nevertheless, as Judge RYAN of the Court of Claims said in his memorandum, the "claimant accepted the modification of its contract and agreed to go ahead with construction with a center pier obstructing the parkway * * * [without any] new agreement releasing claimant from its obligation to maintain traffic thereon". During the course of the work, claimant requested the State to bear the expense of constructing an island of heavy timbers around the center pier. The State officials refused to bear the cost but they interposed no objection to the construction of the proposed island at the claimant's own expense. The claimant apparently decided not to build the island at its own expense.

The general specifications provided: "Damage. All damage, direct or indirect, of whatever nature resulting from the performance of the work or resulting to the work during its progress from whatever cause, including omissions and supervisory acts of the State, shall be borne and sustained by the Contractor, and all work shall be solely at his risk until it has been finally inspected and accepted by the State. The Contractor, however, shall not be responsible for damages resulting from faulty designs as shown by the plans and specifications nor the damages resulting from wilful acts of Department officials or employees."

At about 3:00 A.M. on the rainy morning of July 10, 1952, one Goldman, driving a Chrysler car at high speed south on Taconic Parkway towards the intersection, ran into a timber extending from the center pier which had been intended to channelize traffic and which had blinker lights on the top and flares at the bottom and then ran into the center pier itself despite the fact that it was illuminated by flares and blinker lights. The collision caused a fire which did damage of over $80,000 to the bridge structure.

The claimant filed a claim for this fire loss against the State on the ground that the damage was due to "faulty designs as shown by the plans and specifications".

We believe that the claim was correctly dismissed in the court below. Under the contract, as appears from the paragraph quoted above, the contractor agreed to bear all damage to the work during its progress unless the damage resulted from "faulty designs" or "wilful acts of Department officials or employees". The provision for the maintenance of traffic during the period of construction did not, in our opinion, come within the concept of "design" as that term was used in the exception clause. The other part of the exception clause was plainly inapplicable since there was no claim that the department officials had been guilty of any willful misconduct.

Furthermore, the contractor had affirmatively assumed the risk of traffic accidents. The contractor's own request for an additional allowance for the cost of constructing an island around the center pier indicated that the provision calling for the maintenance of traffic was not "faulty" but that traffic could properly be maintained if suitable precautions were taken. The State quite properly insisted that the contractor should bear the cost of any additional precautionary measures which it might believe to be necessary.

The judgment appealed from should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON, HALPERN and ZELLER, JJ., concur.

Judgment affirmed, without costs.